**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

DAVID M. H.,

Plaintiff,

v. Civ. No. 26-819 KWR/GBW

FRANK BISIGNANO,
*Commissioner of the Social Security Administration*,

Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter comes before me pursuant to the Court's Order of Reference (*doc. 19*) on Plaintiff's Motion to Remand the Social Security Agency ("SSA") decision to deny Plaintiff Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income ("SSI"). *Doc. 9*. For the reasons explained below, I recommend DENYING Plaintiff's Motion and AFFIRMING the judgment of the SSA.

## I. PROCEDURAL HISTORY

Plaintiff filed an initial application for SSDI and SSI on February 29, 2024, alleging disability beginning February 16, 2024. Administrative Record ("AR") at 261–69. Plaintiff's application was denied on initial review on June 18, 2024, and again on reconsideration on October 9, 2024. AR at 92–93, 106–07. On April 23, 2025, a hearing was held by an Administrative Law Judge ("ALJ"). AR at 48–91. The ALJ issued an

unfavorable decision on May 29, 2025. AR at 30–41. The Appeals Council denied review on January 17, 2026, making the ALJ's denial the final decision of the Commissioner. AR at 1. On March 18, 2026, Plaintiff filed suit in this Court. *Doc. 1*.

## II. Standard of Review

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800–01 (10th Cir. 1991). "In reviewing the ALJ's decision, [the Court] neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.2d at 800 (internal quotation marks omitted). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing

two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## III. ALJ EVALUATION

### A. Legal Standard

For purposes of both SSDI and SSI, an individual is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520.[1] If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id.* § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal

---

[1] Plaintiff has applied for both SSDI and SSI. The five-step test for determining disability is the same for both types of benefits, although the test is codified in two separate sections of the Code of Federal Regulations. 20 C.F.R § 404.1520 governs SSDI; § 416.920 governs SSI.

one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id.* § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 SSR LEXIS 27, at *8 (Jan. 1, 1982)). Third, the ALJ determines whether, considering the RFC, the claimant is capable of meeting those demands. *Id.* at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**B. <u>The ALJ's Decision</u>**

On May 29, 2025, the ALJ issued a decision denying Plaintiff's application for SSDI and SSI. *See* AR at 30–41. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 16, 2024, the alleged onset date. AR at 33.

At step two, the ALJ found that Plaintiff's post-traumatic stress disorder (PTSD) was not a medically determinable impairment. *Id*. She found that Plaintiff had the following medically determinable impairments:

> right inguinal hernia and left humeral fracture with repair; status post burn with skin graft; status post aortic valve replacement; status post aortic stenosis treated with coronary angiography and right heart catheterization; and a mental disorder variously assessed as an unspecified mood disorder, insomnia, and a mild cognitive impairment.

*Id*. However, she determined that Plaintiff did not have an "impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months." *Id*. Therefore, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments. *Id*.

Because the ALJ found no severe impairments at step two, she did not proceed to the remaining steps of the sequential analysis. *See* 20 C.F.R. § 404.1520(a)(4)(ii) ("If you do not have a severe medically determinable physical or mental impairment that meets

the duration requirement . . . we will find that you are not disabled."). She determined that Plaintiff was not disabled from February 16, 2024, through the date of the decision. AR at 40.

## IV. Parties' Positions

Plaintiff argues that the ALJ erred at step two by finding that his physical impairments[2] were not severe and that he could perform a full range of work. *Doc. 10*. Defendant argues that the ALJ's decision should be affirmed because the ALJ reasonably concluded that Plaintiff did not carry his burden to establish any severe impairments. *Doc. 14*.

## V. Analysis

Plaintiff argues that the ALJ incorrectly applied step two's "de minimis" standard to his cardiovascular and other physical impairments and that the decision was unsupported by substantial evidence. *Doc. 10* at 4–8.

### A. Step Two Standard

To meet his burden of proof at step two, Plaintiff was required to "demonstrate an impairment or combination of impairments that significantly limits [his] ability to do

[2] The arguments in Plaintiff's brief are limited to his cardiovascular impairments, broken femur, use of a cane, slightly antalgic gait, and varicose veins. *See doc. 10* at 4–8. Accordingly, this review is limited to those issues and does not reach Plaintiff's other symptoms or impairments. *See, e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those . . . contentions that have been adequately briefed for our review."); *Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016) ("[I]t isn't [the court's] obligation to search the record and construct a party's arguments.").

basic work activity." *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (citing 20 C.F.R. § 404.1520(c)). "An impairment is 'not severe' when the 'medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *Todorova v. Comm'r, SSA*, 762 F. App'x 510, 513 (10th Cir. 2019) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12 (1987)); *see also* 20 C.F.R. § 404.1522(a). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs" and include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." *Id*. § 404.1522(b).

Step two is "designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'" *Lee v. Barnhart*, 117 F. App'x 674, 677 (10th Cir. 2004) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring)). It requires only a "'de minimis' showing of impairment"; however, "the claimant must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). If the ALJ determines that "the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities," a finding of non-severity is warranted. *Id*. (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). The finding of non-severity must be

"clearly established by medical evidence." SSR 85-28, 1985 SSR LEXIS 19, at *9 (Jan. 1, 1985).

**B. Cardiovascular Impairments**

At step two, the ALJ found that Plaintiff's status post aortic valve replacement and status post aortic stenosis were medically determinable impairments. However, the ALJ noted that Plaintiff's aortic stenosis and resulting aortic valve replacement occurred in 2019, five years prior to the alleged onset date, and that follow-up appointments in 2019 and 2020 indicated he had recovered well and was able to return to full activity at work without symptoms. AR at 34–35. The ALJ discussed multiple visits after the alleged onset date where Plaintiff denied chest pain and other cardiovascular symptoms and had normal examination findings. *See* AR at 35–36 (discussing visits in February 2024, July 2024, and March 2025). In October 2024, Plaintiff complained of shortness of breath with exertion and requested continuous oxygen, but his oxygen saturation level was measured at 99% after walking two hundred and four hundred feet. AR at 36. In April 2025, Plaintiff presented to the emergency room with complaints of chest pain, syncope with a fall, nausea, diaphoresis, and difficulty breathing; however, examination revealed a normal heart rate, rhythm and electrocardiogram. AR at 36. The ALJ found the opinions of agency consultants Randal Reid, M.D., and Scott Spoor, M.D., persuasive, and concluded that

Plaintiff's physical impairments were non-severe. AR at 38; *see* AR at 96, 102, 111, 119.

Plaintiff does not challenge the ALJ's characterization of any of this evidence. However, he contends that he met the "de minimis" step two standard with respect to his cardiovascular impairments because (1) imaging[3] on April 12, 2025, showed median sternotomy changes and a fractured inferior sternotomy wire, and (2) Carolina Ponce, M.D., opined in April 2025 that he had severe and debilitating chest pain. *Doc. 10* at 5; *doc. 15* at 2.

Dr. Ponce's one-page letter states that Plaintiff was evaluated in the cardiology clinic and was "recently found to have fracture wires in his sternum leading to severe and debilitating chest pain." AR at 1112. The letter states that Plaintiff will undergo "a complete cardiac workup including echocardiogram, blood pressure monitor, cardiac monitor as well as blood work," and that "until workup is completed I have suggested [Plaintiff] to avoid lifting anything heavier than 10 pounds . . . driving or performing any strenuous exercise." *Id.*

The ALJ discussed Dr. Ponce's letter as follows:

> Treating provider Carolina Ponce, M.D. reported that the claimant should not lift more than ten pounds, drive, or perform strenuous exercise "until a cardiac workup was completed." Given that this opinion is time-limited, it has diminished probative and persuasive value. Further, Dr.

[3] Plaintiff describes the cited imaging as a CT scan. *Doc. 10* at 5. While a CT scan was performed on April 12, 2025, *see* AR at 1097, the record actually cited by Plaintiff appears to document a chest x-ray performed on the same date, *see* AR at 1102. The findings included "[m]edian sternotomy changes with mediastinal surgical clips present" and "[f]ractured inferior sternotomy wire." *Id*. These were not noted on the CT findings. *See* AR at 1100.

> Ponce's assessment is not supported by objective findings, as she herself noted that the claimant had not completed a cardiac workup yet. The other evidence of record is consistent with a finding that the claimant's physical impairments do not cause work limitations and are non-severe. For example, the claimant was generally noted to have a regular heartrate and rhythm and he often denied chest pain, palpitations, dyspnea on exertion, dizziness, and leg swelling. Further, in April of 2025, an EKG was normal. As such, Dr. Ponce's opinion is unpersuasive.

AR at 39.[4]

The undersigned finds that the ALJ's evaluation of Plaintiff's cardiovascular symptoms applied the proper legal standard and was supported by substantial evidence. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1509. The ALJ correctly noted that Dr. Ponce's letter was based on the "recent[]" finding of fractured wires in Plaintiff's sternum, and was explicitly time-limited to "until workup is completed." AR at 1112. It was Plaintiff's burden at step two to demonstrate a severe impairment meeting the duration requirement. *See* 20

[4] While the ALJ did not separately discuss the April 12, 2025 x-ray showing a fractured inferior sternotomy wire, Dr. Ponce's opinion—which the ALJ discussed in detail—was explicitly based on that finding. *See* AR at 1112. The radiology report did not include any additional information about Plaintiff's symptoms, limitations, treatment, or prognosis. *See* AR at 1102. The undersigned does not therefore find that additional discussion was required. *See Clifton*, 79 F.3d at 1009–10 ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").

C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment *that meets the duration requirement* in § 404.1509. . . we will find that you are not disabled." (emphasis added)). It was therefore appropriate for the ALJ to consider the time-limited nature of Dr. Ponce's recommendations. *See, e.g.*, *Moore v. Astrue*, 2010 U.S. Dist. LEXIS 51189, at *11–16 (D. Kan. Apr. 27, 2010) (affirming decision of non-severity at step two where the ALJ "acknowledged plaintiff's serious injuries but pointed to evidence that plaintiff's condition had improved before twelve months"). Critically, neither Dr. Ponce nor any other medical source opined that Plaintiff had been, or was expected to be, under physical limitations for a period of at least twelve months. In other words, in determining that Plaintiff's impairments were non-severe, the ALJ did not actually reject any medical evidence or opinions demonstrating functional impairment(s) expected to last at least twelve months. Conversely, the ALJ discussed abundant record evidence that showed little or no functional impairment resulting from Plaintiff's cardiovascular impairments. *See* AR at 35–36. The ALJ therefore reasonably concluded that Plaintiff had not demonstrated "an impairment or combination of impairments that significantly limits [his] ability to do basic work activity," *Hawkins*, 113 F.3d at 1169 (citing 20 C.F.R. § 404.1520(c)).

Plaintiff argues that the ALJ applied the incorrect legal standard because she

"did not ask whether [Plaintiff] had presented 'de minimis' evidence of limitations, but instead found that the contrary evidence outweighed his evidence." *Doc. 10* at 6. Plaintiff cites *Brand v. Berryhill*, where the court held that the ALJ applied the wrong legal standard by failing to account for the claimant's "de minimis" burden at step two. 2019 U.S. Dist. LEXIS 36599, at *15 (D.N.M. Mar. 6, 2019), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 51311 (D.N.M. Mar. 26, 2019). In *Brand*, the claimant's treating physicians opined that she had significant functional limitations. *Id*. at *13–14. The ALJ and Appeals Council gave their opinions "little to no weight" and "little weight," respectively. *Id*. at *16. The court held that the ALJ erred because the medical record evidence was "equivocal," meaning that the finding of non-severity was not "clearly established" pursuant to SSR 85-28. *Id.*; *see also Gosch v. Astrue*, 2011 U.S. Dist. LEXIS 53889, at *17 (D. Kan. May 19, 2011) ("[B]ecause the medical evidence is equivocal, it was error to decide this case at step two of the evaluation process."). The court therefore held that the ALJ's decision applied the incorrect standard and was unsupported by substantial evidence.

The present case is distinguishable because the medical record is not equivocal; on the contrary, there is *no* medical evidence demonstrating a severe cardiovascular impairment that met the duration requirement. *See* 20 C.F.R. § 404.1520(a)(4)(ii); *c.f.* *Brand*, 2019 U.S. Dist. LEXIS 36599, at *12 (claimant's treating physician opined that she

had extreme limitations "expected to last 12 months or more"); *Gosch*, 2011 U.S. Dist. LEXIS 53889, at *14 (record evidence showed that the claimant was twice hospitalized for her impairments during the relevant period). Indeed, the court in *Brand* specifically noted that:

> In support of her denial of Ms. Brand's claim at step two, the ALJ erroneously stated that the 'record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has any functional limitations during the relevant period.' Were this true, the ALJ might have been justified in finding Ms. Brand did not make a de minimis showing of medical severity.

2019 U.S. Dist. LEXIS 36599, *11. As explained above, although Dr. Ponce recommended several limitations based on the finding of a fractured inferior sternotomy wire, those limitations applied by their plain terms only "until workup is completed." AR at 1112. Plaintiff cites no other medical evidence indicating that the fractured wire was expected to impact his ability to perform basic work activities for more than 12 months, or that his cardiovascular impairments otherwise necessitated functional limitations. Therefore, the undersigned finds no reversible error in the ALJ's assessment of Plaintiff's cardiovascular impairments.

**C. Other Physical Impairments**

Plaintiff also challenges the ALJ's step two findings of non-severity with respect to his broken femur, use of a cane, slightly antalgic gait, and varicose veins. *Doc. 10* at 7. Plaintiff argues this evidence "is inconsistent with a finding of no severe impairments

or that [he] could perform a full range of work without limitation." *Id*. at 7–8.

The ALJ discussed Plaintiff's testimony that he "had trouble lifting, squatting, walking more than ten minutes at one time, bending, and climbing stairs, and . . . used a cane," AR at 34, as well as his history of a broken left femur with surgery, AR at 35. However, the ALJ noted that treatment records from December 2021 and February 2024 indicated normal extremities and full muscle strength. *Id*; *see* AR at 668, 671. Imaging of the left femur in May 2024 showed evidence of a healed fracture, with no evidence of hardware loosening and no evidence of acute abnormality. AR at 739. In July 2024, treatment notes indicated that Plaintiff was ambulating with a slightly antalgic gait and cane. AR at 751. Plaintiff reported large and distended veins in his leg but reported he had "[n]o pain." AR at 747. The provider noted bilateral lower extremity varicosities and recommended that Plaintiff stay mobile and use compression garments. AR at 751. Plaintiff declined a referral to a vascular specialist. *Id*. At an annual wellness exam in March 2025, Plaintiff reported no current complaints and had full range of motion in all extremities, with no edema. AR at 1073–74. In April 2025, Plaintiff presented to the emergency room with chest pain and syncope and was noted to be ambulatory with a cane for assistance, but denied leg swelling, back pain, or myalgias, and had normal range of motion. AR at 1086–87.

Notably, no medical source opined that Plaintiff had any limitations related to his history of a broken femur or his varicose veins. Likewise, no medical source opined that he had any limitations on ambulation. Dr. Ponce's letter recommended that Plaintiff avoid "performing any strenuous exercise" until a cardiac workup was completed, AR at 1112, but did not include any recommendations related to walking or standing. Although Plaintiff sought treatment for varicose veins, he contemporaneously reported that he was experiencing no pain. AR at 747. His treating provider's recommendation was to stay mobile and use compression garments, not to restrict activity. AR at 751.

Additionally, while Plaintiff used a cane during several medical visits, the record does not show that any provider prescribed or recommended the use of a cane, nor that any medical documentation established the need for a cane. *See* SSR 96-9p, 1996 SSR LEXIS 6, at *19 (July 2, 1996) ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]"); *Staples v. Astrue*, 329 F. App'x 189, 191–92 (10th Cir. 2009) (SSR 96-9p "does not require that the claimant have a prescription for the assistive device in order for that device to be medically relevant," but it does require the claimant "to present medical documentation establishing the need for the device").

In sum, the only medical evidence supporting Plaintiff's claim of a severe impairment is the slightly antalgic gait noted on one occasion. AR at 751. During the same visit, he denied any pain. *Id*. While step two requires only a "de minimis" showing of impairment, it is nevertheless designed to exclude "claimants with such slight impairments they would be unlikely to be found disabled even if age, education, and experience were considered." *Hinkle*, 132 F.3d at 1352 (citing *Yuckert*, 482 U.S. at 153); *see also* 20 C.F.R. § 404.1522(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."). In this instance, after reviewing the medical evidence, the ALJ reasonably concluded that Plaintiff did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months. AR at 33. Plaintiff has not demonstrated that his physical impairments were more than "slight," *Hinkle*, 132 F.3d at 1352, or that he had any significant functional limitations. Therefore, the undersigned finds the ALJ's step two determination was supported by substantial evidence and should be affirmed.

## VI. CONCLUSION

For the foregoing reasons, I recommend DENYING Plaintiff's Motion to Reverse and Remand (*doc. 9*) and AFFIRMING the Commissioner's decision.

GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**